Case number 2018-26 Carhartt Inc versus Innovative Textiles Inc at all. Oral argument not to exceed 15 minutes per side. Mr. DeRosier, you may proceed for the appellant. Thank you. Good morning. May it please the court. Philip DeRosier appearing on behalf of the plaintiff appellant Carhartt Inc. With the court's permission, I'd like to reserve three minutes for believe the district court erred in granting summary judgment to Innovative Textiles under section 2607 of Michigan's UCC because whether Carhartt should have discovered the fabric defect at issue and notified Innovative sooner than it did was a question of fact for the jury, not a decision for the district court to make as a matter of law. The defect at issue here involved the fabric's flame resistance, which is something that could only be discovered through specialized testing. The party's contract allocated that testing responsibility to Innovative, requiring every fabric delivery to meet Carhartt specifications. In disregarding that agreement, the district court reasoned that Carhartt could have done its own fire resistance testing, but reasonable minds could differ on whether Carhartt was entitled to rely on Innovative for that under the party's agreement. The key, we think, is recognizing the latent nature of this fabric. Does the record show what the custom in this industry is in terms of whether the buyer tests? Let me grant you that it does seem to be a latent defect, which helps you in one sense, but in another sense, given that it's so important, it really is flame-resistant clothing, you would think the custom would be that buyers would test. Does the record show one way or the other? I can't tell you that it doesn't, but I'm not aware of that having been developed in the summary judgment record. I'm curious why not. Isn't the UCC all about custom reasonableness? Well, yeah, I think that that's right, but what it also does is it supports the party's freedom of contract. Here, the thing you have to remember about this fire resistance testing, it's very specialized. Even Innovative had to contract out to a third party, diversified, to have it done. Because of the nature of this testing, it's destructive, because of the importance of the fire resistance and how specialized it is, that's why the party's contracted to place that responsibility here on the supplier. Does your client have the capacity to do the testing on its own? Well, I would concede that, yeah, the record seems to suggest that it could have theoretically been done. Now, whether or not it would have revealed these particular defects or not, I think it's... I thought it was being done in some areas, some factories, no? No. The testing that eventually occurred here did not occur until sometime later in the process. Really, it was 2012 when the fabric first started being developed and delivered. Continued through 2016, there was a switch in the fabric in 2014. That's when what we claim where these testing failures started to occur. It was in June, I think, May or June of 2016, in that approximate timeframe, that internally, Carhartt did develop a new program for doing more testing on its own in terms of this fire resistance. That's how this thing developed. But no, during the relevant time period, Carhartt was not doing that testing and didn't have the procedures in place at that time. Does that answer your question? Yeah. Okay, thank you. And I think, again, going back to the latent nature of the defect, I think it is important here because both the district court and Innovative rely on the Michigan Court of Michigan stressed the need to inspect delivered goods for apparent defects. Can I just stop you there? Absolutely. What seems to be helpful to them in the lower court ruling is that also looked like a latent defect. They talked about being able to hire an expert and you don't use experts for apparent defects. I'm pretty confident I, for one, would not have been able to tell you this was not the famous race car driver's car. So if you have to get an expert, that suggests that was a latent case and the party in your position lost that case. Well, so here's your honor, I think the difference. The court of appeals and Bev Smith actually found that it wasn't a latent defect case and here's why. Number one, the buyer had documentation, putting it on notice of the use of these inauthentic parts in the car. And not only that, the court concluded that the use of these replacement parts was something that was readily apparent to the eye. So a trained observer, in this case, an expert appraiser, upon visualizing the car would have appreciated the nature of the defect. And so it was for that reason that the Michigan Court of Appeals specifically held that this wasn't a defect that was latent or otherwise hidden from view. And so really that's the difference between, I think, that case and this one, is it doesn't matter whether you have an expert or not. Nobody was going to visually determine that this fabric did not meet the flame resistance requirements. That's what made it latent because in the words of the Court of Appeals of Michigan, it wasn't readily apparent in the sense that it wasn't something that you could observe when you took delivery of the product. Again, it required this destructive testing. And so I think that's a really important distinction between our case and the Bev Smith case. It's the fact that, and look, at the end of the day, I think that whether this defect here was similar to the one in Bev Smith, whether it was latent, as we claim, I think really goes to my ultimate point that these are not issues that were properly These were factual issues that reasonable minds could differ on, and that's why the case should have been sent to a jury to decide this reasonable notice question. Because the only way that Carhart was going to know about this defect sooner than it did was to do its own fire resistance testing. Again, this destructive process, but the parties, again, they agreed that it was... Counsel, at the district court level, was it your position that this should go to trial, or was it your position you should win as a matter of law? So we did move for partial summary judgment on our own, and we also responded to a motion for summary judgment that was brought by Innovative. And so I think if I could fairly characterize our position, sure, I think we took the position in our motion for partial summary judgment that we thought it was clear. But in responding to Innovative's motion, the fallback or the trial, absolutely. And so, again, just to sum up, while the district court concluded that Carhart didn't act reasonably in relying on Innovative for this testing, we think that the fundamental nature of the question under the UCC about whether a defect should have been discovered and reasonable notice provided, that those are questions that just are naturally suited and here, based on the record, were developed for presentation to the jury. This question, this is not a case about selling a fancy car. It's a case about ultimately distributing to consumers something that has to be safe. So think of it as drugs, building a submarine, or in this case, flame-resistant clothing for people going into places that are quite dangerous. Why wouldn't it be the custom, the rule that when you're selling something that is really important, that it's made right, the ultimate seller, you, even though you're the buyer here, you're ultimately the seller, has to always test. Like who wouldn't test a product that has to be safe, whether because it's a drug, it's clothing, or it's a sub that doesn't blow up below 1,500 feet underwater? Shouldn't someone in that field always test? And if that's true, that would mean you should find out sooner than three years that this wasn't compliant fabric. So, Your Honor, I guess I would again come back to, that's a very good question, but that's not that a court can decide as a matter of law. I mean, there was no case law supplied. There was no evidence that this is something that was customary or should have been made part of a policy for the reasons you articulated. But certainly, if Innovative wanted to take that position at trial and try to convince a jury of that, that in this situation, for all the reasons you just identified, the testing should have been done and the defect should have been determined. But again, I think every question that has come up and that has come up in my own mind, I think it really just goes to show why this was a case that is not appropriate for a court to decide as a matter of law. It should have been for the jury. And that's why we would ask the court reverse the entry of summary judgment to Innovative and remand and let the claims for breach of contract and breach of warranty go to the jury, where we think that's where they're properly resolved. Unless there are any other questions, I'm happy to stop there and listen to co-counsel and then talk to you again in a few minutes. All right. Co-counsel, Mr. Collier? Can't hear you. I'm so sorry. Good morning. May it please the court. I'm Trent Collier. I'm representing Innovative Textiles, Inc. and Innovative Textiles, LLC. And I'll just refer to them both as ITITI. We asked that the court affirm the lower court's judgment. The lower court properly applied Section 2607 and the Bev Smith case to hold that no reasonable juror could conclude that Carhartt properly failed to inspect this product for over two years. I think the main difference between Carhartt and ITI really comes down to what the meaning of the Bev Smith case is. In Carhartt's view, Bev Smith really only applies to latent defects. I would note that Section 2607-3 itself does not distinguish between patent and latent defects. So I'm not sure that's a proper lens to view it through. But even if that's a lens that you view this case through, there's a paragraph in Bev Smith where the Court of Appeals says this defect was obvious. You shouldn't have been able to see it. The next paragraph of the opinion says that even if it was obvious, you shouldn't have been able to see it. So I think that's a good appraiser to look at. So did you put any evidence in about what the custom in the industry is about the buyer, the folks in Carhartt's positions, responsibility normally is when it comes to testing? We put in evidence about what Carhartt's duty was. So we didn't put in evidence about other companies. What we showed was that when Carhartt first began buying the product... Why isn't that highly relevant? I mean, I have all kinds of ideas what would make sense in this area because flame-resistant clothing is pretty important. It's flame-resistant. But what do I know? Why wouldn't that be the kind of thing that we should expect some evidence on? And if the evidence is one-sided, maybe summary judgment is appropriate. But if the evidence is not one-sided, that sounds starts to sound like a jury question. It's not a jury question in this case because Michigan has a slightly different rule than other jurisdictions that have applied to 607. Carhartt cites cases where... And this is like the Posner case, the Judge Posner case, Hydrate, I think it was. There's jurisdictions that say, we're just going to look at the facts. We're just going to look at custom. We're going to see the way the facts in this case played out. Michigan has a different rule. Under Bev Smith, there is a duty to get an expert. And because Carhartt did not get an expert to look for this defect, we know as a matter of law, that it was required to do so. So we don't have to inquire. Mr. Collier, I want to take that to its logical extreme, if we can, for just a minute. As you know, Michigan is a car state. I have an assembly plant about a quarter of a mile right down the road from my chambers. It seems to me, if you take your argument and you extend it to its natural conclusion, every part that comes into one of the auto plants down the road would have to be subject to destructive testing, if that's really the obligation that Bev Smith imposes term reasonable under the UCC. It seems to me that can't possibly be the rule. The safety of cars is obviously as dependent on the strength of the metal when they used to use metal or plastic that they use now as the safety of the garment and whether it's fireproof or not. So where do you draw the line about what has to be tested and how often and how much testing has to be done as a matter of law, as opposed to a jury decision? I think it's going to vary depending on whether you're talking about a consumer or a manufacturer such as Carhartt. But in the hypothetical that you gave your honor, if you're getting a batch of parts, it's not too much to ask the car manufacturer to test one part out of each batch. I don't think that is asking too much. And I think, frankly, that is what Bev Smith holds. So why can't that obligation, assuming that it exists? First of all, there's no Michigan case that says that as far as I know. But even assuming that you're right, why can't that obligation be contractually shifted to, in this case, the supplier to do that testing? Well, there's two answers. One is legal and one's factual based on this case. The legal answer is the UCC prohibits parties from contracting out of the duty of good faith and the duty of diligence. And this duty to inspect products is a function of both of those duties. And so Carhartt didn't even try to contract out of these. Well, they inspected the product. You're just saying that their inspection didn't go as far as you think Bev Smith obligated it to go, right? I think Bev Smith required them to get an expert if they needed to make sure it was fire resistant. The other key point I wanted to... And how often would they have been obligated to test this fabric? Every piece of material that came in, every bolt of cloth, every truckload. Keep in mind now we're talking about as a matter of law, not as a matter of fact. So what are you saying was the obligation here? Well, I don't think Bev Smith goes into detail about how often they need to do it. It's going to vary by the product. In this case, I think each batch they should have inspected. And I think that's what Bev Smith requires. The other thing I wanted... So what facts are in the record, going back to where Judge Sutton was earlier, what facts are in the record that would support that to be the outcome of this particular case as a matter of law, as opposed to submitting it to the jury? There's a few facts. One is Carhartt in 2008 expressly said that it was going to test the product. It said that again in 2010, in 2011, in 2012. Carhartt kept telling ITI that it was testing this product and then it didn't. You're talking about emails and things like that, not the actual written contract between the parties, right? Correct. Well, the contract is an integrated contract here. So I think that those emails would be relevant to the jury as to whether they acted reasonably. But you're not saying that they had assumed that duty under the contract, are you? Yes. Well, what I'm saying is that Carhartt's interpretation of the contract is that because the contract said that ITI was going to test the product, Carhartt says, well, that means we don't have to test the product. That's not what the contract says. And so the contract has to be read in light of the UCC and in light of the custom and in light of everything Carhartt was telling ITI. Our view is that no reasonable juror could see Carhartt repeatedly say that it was going test the product, could see the testimony from Carhartt that they had the capacity to test the product, could see Carhartt to say... Excuse me for interrupting, but the actual contract says that all goods and services manufactured or assembled by the vendor, which I take to mean that's innovated, shall have been tested to and comply at all times with the specifications provided by the UCC. So it was seen that the contract required innovative to do the testing. It required innovative to test. It did not take away Carhartt's duty under the UCC to test. And under UCC section 44, well, this would be NCL 44-1302. So section 1302, a buyer cannot get out of the obligations of good faith, diligence, reasonableness, and care. So the section that you just read, Judge Clay, I would... Michigan case law has this distinction between apparent defects and latent defects. Well, that's in Bev Smith, among other places. So a lot of this would hinge upon whether we're dealing here with a latent defect that wouldn't be apparent or an apparent defect, because the duties of the product is vis-a-vis testing and other things might be different depending upon whether the defect was apparent or latent. Wouldn't that be the kind of quintessential, based upon the factual context, the sort of thing that would be submitted to the jury for the jury's determination? I don't think so. I don't think the case law really does distinguish between a latent and a patent defect, because in Bev Smith, the court found that it was latent, but then went on to say, even if it was latent, you had to get an expert. So that extra step means it doesn't matter whether it's latent or patent. You had to take whatever steps were necessary. The buyer must take whatever steps it needs to, to make sure it conforms with the buyer's specs. And actually this court's opinion in Ontario supports that reading of Bev Smith. In Ontario, you had some, these kind of tarps that went on the side of a truck and they would hold dirt. And so the buyer in 2011 knew that there was a problem and didn't look into it. But the whole point is they knew there was a problem for two years and they didn't do anything. What, where is there any evidence that Carhartt knew there was a problem there? Well, I don't think there is evidence that Carhartt knew there was a problem, but I disagree. So if there isn't any evidence, they knew they have a problem. Seems to me Ontario's out. But more importantly, to go back to sort of the fundamental premise that you and Judge Clay are talking about, do the emails, assuming that you attach the significance to them contractually that you do, do they say that Carhartt will do destructive flame resistant testing? They don't, but I don't think they need to. So, so the mere fact that they said that they'll, that they'll, that they'll test or inspect, I guess would be another way to put it. That's then enough to trigger the duty to do destructive expert testing, the absence of which means their conduct was not reasonable under the UCC. Correct. And is there, is there a case, is there a case that even comes close to what I think is an astounding argument beyond Bev Smith, where the defect was clearly latent? Well, I disagree about Bev Smith. They said, if you get an ex, you need an expert, you have to get an expert. The Ontario case is important here because they knew there was a problem. They didn't know the source of the problem. And what the, what this court held is you had a duty once you knew there was a problem to find out what the source of the problem was. Well, of course, if you know that, if you know there's a problem, you got a duty to investigate, but where was there any knowledge of a problem here? We're not claiming that there was knowledge of a problem. What we are claiming is that Carhartt had a duty of good faith shaped by the Bev Smith case to inspect the batches often enough to find if it met its specs. I'm starting to think Bev Smith is, is just a forgery case. It's just, it's specialized in the sense that the whole point of what you're buying is it's an antique. The whole point is, this really is the Mona Lisa. When you're, when that's the whole point of the purchase, it is on you to make sure it's actually the Mona Lisa. You're not allowed to say three years later, oops, we bought a forgery. And so maybe that's what Bev Smith means, but that's not what this case is. There's no doubt the fabric was sold. They got what they thought they were getting. The point wasn't whether there was a forgery. The point was whether it met this one spec. And maybe that's, maybe that's why Bev Smith isn't that useful here. I don't think that's an accurate reading of Bev Smith because Bev Smith was talking about what Section 2607-3A means. And the Court of Appeals surely knew that this is a section that applies to lots of contracts between buyers and sellers and is central to commerce in the state of Michigan. So I don't think the Court of Appeals would have applied 2607 in that narrow a fashion without realizing what it was doing. And what it did is it made a rule that said, if you need to get an expert to make sure this product meets your specs, you need to get an expert. And no, this is the problem with saying- Again, again, Bev Smith- I'm sorry, go ahead, Judge McKee. Has Bev Smith ever appeared cited favorably in a reported decision to indicate why a buyer's conduct was not reasonable? I'm not sure I know the answer to that question. To my knowledge, no. I think Bev Smith was quoted in Ontario, which is certainly unpublished. So I don't think I'm aware of a published case that treats it in that fashion. And your argument is that that correctly reflects what the Michigan Supreme Court would say relative to the duty to do destructive testing on some unknown percentage of batches in commerce. It is because Michigan has a rule that puts the burden on the cheapest cost avoider, and that's the buyer. And the buyer here, Carhart, sat on its rights for over two years and now wants to look back. Why is Carhart the cheapest cost avoider, if I understood that phrase correctly? Innovative is the one that has all of this fabric. They can test the fabric that's not even put into a product. They don't have to destroy a product to test it like, as I understand, Carhart would have to. Carhart's the cheapest cost avoider because no one is in a better spot than Carhart to know whether this product meets its specs. And one of the critical- I know I'm out of time. I don't know if I can- I'm just trying to figure out why are they in any better place to determine whether something that meets the specs than the supplier? Why is the buyer in a better position? It's a pretty simple, straightforward question. The buyer is in a better position because the buyer knows its specs. Well, so does the seller. The specs are set forth. They both are operating on the same specs. So all I'm trying to get you to tell me is why is the seller better, the buyer, better to- in a better situated to determine if those specs are met than the person who's selling the product that claims the specs are met? Well, one reason is that the buyer has sole control over when this product is being used. In this case, when Carhart first bought this fabric, it passed all the tests. Carhart said this passed all the tests. It was only years later when Carhart went back and retested it that it found that there were problems. When ITI sold this fabric, we had no ability to hang on to it and test it two years later because we had to fulfill Carhart's order. I see I'm out of time. Yes, we'll hear rebuttal at this time. Thank you, Your Honor. So let me start. I wanted to clarify what I said in response to one of Judge Sutton's questions about, you know, did we ask to go to the jury? And I just want to be clear. And I actually went back and just kind of refresh my memory. You know, look, we obviously did move for partial summary judgment, as I said. We also responded and asked that the summary judgment motion brought by Innovate be denied. The hearing on the motion was all kinds of discussion. The decision being about whether the case should go to a jury. But I mean, I want to be frank. I don't know that we certainly didn't make the plea that we're making on appeal that this is a jury submissible issue. I mean, we certainly did advocate at the time that this was something that could be decided in Carhart's favor. I don't think that alters, you know, the fundamental question that's ultimately before the court. But I did just want to clarify that so that there a couple of. I'm sorry, were you going to ask a question, Your Honor? Oh, no. So let me just address a couple of things. The other point that Judge Sutton raised that I think is interesting and I think is an important and helpful insight on Bev Smith. I don't think we need to rely on this in order to prevail. But I do think that Bev Smith is unique because you are talking about an issue of authenticity. And if you take a look at the Smith's court cited, and this is that page and I apologize, I'm citing the Mishap reporter, but at page 686, a couple of cases that the court cites, if you take a look at those cases, those are both art cases. And so I think that, you know, what we're talking about here in terms of what Bev Smith was recognizing is, look, you had evidence that this car contained replacement parts. Authenticity was the key here, Judge Sutton, as you noted. And so that's why I think there the Michigan Court of Appeals said, you know, look, this would have been readily apparent had an expert taken a look at it. And so that's why it wasn't considered latent. But I do think that that's a different case. And, you know, returning, I think, to what Judge Clay was sort of teasing out, I really do think that this case comes down to whether this was a latent defect or whether it was readily apparent. And that is fundamentally a jury question. And then, you know, with respect to the allocation of responsibility, and Judge McKee got into that in terms of, you know, what prevents the parties from assigning responsibility by contract. And I just want to reiterate that there's nothing that precludes that. And again, you think about the very specialized nature of this relationship, you know, Carhartt, you know, goes out and obtains a supplier, a very specialized, you know, fabric, it has to be fire resistant for it to market these products to its customers. So it's going to rely on the expertise of the supplier that was put into the contract. And, you know, again, at the end of the day, if there's any question about the reasonableness of that, I think you can still safely return to, you know, saying, well, if there's any question, then it goes to the jury. It's not something that a court can look at all of these circumstances and just determine, you know, on a summary judgment motion that, you know, this is what Carhartt should have done, should have discovered this defect sooner. These are all fundamentally jury questions. Real quickly, the other things I just wanted to touch on, you know, the emails about testing. I mean, Judge Clay, you're right, this was not part of the contract. The other thing about those emails, and again, I think I throw those into the mix of but there was deposition testimony that clarified that what, you know, what you're talking about, typically, is you're, you know, you're observing the material. Is it the right color? You know, you're visually inspecting the things as they come in. So I think there's at the very least a question about whether they're talking about fire resistance testing in those emails, which, you know, I think it should this case go to trial, it'll be revealed that that's not, in fact, what was being discussed. Because again, the testing responsibility was placed on innovative. And then finally, I disagree that this that reliance on the contract is, you know, contracting around or contracting out of, you know, the good faith obligation, the due care obligation to the UCC. I think all this does is it recognizes that in this particular situation, the contract is something that the parties are free to look at. You know, we cited authority in our brief from the Michigan Court of Appeals about how the UCC is about freedom of contract. It's the Hayward versus Postma case, 31 Mishap 720. So I don't think that what we're doing here is seeking to contract around an obligation. And at the end of the day, again, if the jury concludes, given all of these facts that we've been discussing, that, you know, that Carhartt should have done more, that that's for them to determine. The one last thing, and I apologize, I've actually lost track of my time. One other thing I just wanted to mention is this idea of latent versus readily apparent defects. It's not, Michigan is not somehow unique in saying that, well, we don't recognize that. There's always a uniform, you know, unbendable requirement to hire an expert to inspect no matter what it requires. You know, I think we've discussed this and I think I've shown that Bev Smith itself recognizes the difference, but also more importantly, if we cited this very well-established authority in our brief, if you go to Anderson on the Uniform Commercial Code, it specifically talks about a reasonable time to give notice of breach, requires an examination of the facts and circumstances of each case, particularly where latent defects are claimed. So the idea that Michigan somehow has this special, unique approach to the UCC, I just don't think there's any support for it. And so with that, I apologize if I ran over. I'm happy to answer any questions, but I really do appreciate your time. Thank you very much, and the case is submitted.